UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS LOCKARD and ADAM
SANTIAGO,

              Plaintiffs,

v.

CITY OF DETROIT, MATTHEW BRAY,
and REGINALD BEASLEY

              Defendants.

Case No. 18-13045

Paul D. Borman
United States District Judge

David R. Grand
United States Magistrate Judge

## OPINION AND ORDER DENYING IN PART, GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 87)

### I.    Procedural History

The instant 42 U.S.C. § 1983 action arose as one of five cases from a failed class action lawsuit against the City of Detroit and individual officers that was denied class certification by this Court.[1] *Davis v. City of Detroit,* No. 15-10547, 2018 WL 4179316 (E.D. Mich. Aug. 31, 2018). Plaintiff Douglas Lockard and his son Adam Santiago filed this independent § 1983 action on September 28, 2018. (ECF No. 1.)

---

[1] In addition to the instant case, these lawsuits include: *Reid v. City of Detroit, et al.*, No. 18-13681; *Frontczak v. City of Detroit, et al.*, No. 18-13781; *Gardella v. City of Detroit, et al.*, No. 18-13687; and *Metris-Shamoon v. City of Detroit, et al.*, No. 18-13683.

Plaintiff Douglas Lockard alleges that he was subject to an unlawful search and seizure of his home without probable cause by members of Detroit Police Department ("DPD") narcotics squad and has brought claims under the Fourth and Fourteenth Amendments against individual officers, as well as a municipal liability claim against the City of Detroit. (*Id*.)

On October 16, 2020, Defendants filed a Corrected Motion for Summary Judgment and Motion to Dismiss Pursuant to Fed. R. Civ. P. 56 and 12(c). (ECF No. 87.) Plaintiffs filed a Response on November 5, 2020 (ECF No. 88), and Defendants filed a Reply on November 19, 2020. (ECF No. 93.)

Plaintiffs have agreed to dismiss all 14th Amendment claims (ECF No. 87 PageID.2097.) On April 22, 2021, this Court entered an order dismissing Defendants Radames Benitez, Rodger Johnson, Tiffany McCrackin, Cedric Coleman, Damon Kimbrough, and Leo Rhodes. (ECF No. 116.) The remaining claims are the Fourth Amendment claims against Officers Matthew Bray and Reginald Beasley, and the municipal liability claim against the City of Detroit. The issue of whether Plaintiffs have also filed an excessive force claim will be dealt with in a separate Order on this date.

## II.    Background

The date of the execution of the search warrant on Lockard's home is disputed. According to the Plaintiff, the narcotics raid took place on Monday, October 15, 2012 around 3:15 p.m. (Deposition of Plaintiff Douglas Lockard, ("Lockard Dep.") 26:3–7, ECF No. 87-20.) Defendants claim the raid occurred on Wednesday, October 17, 2012.

Former Defendant Sgt. Rodger Johnson served as the Officer-In-Charge of the raid on Lockard's home, and was assisted in the execution of the search warrant by Defendant Bray and former Defendants Benitez, McCrackin, Coleman, Kimbrough, and Rhodes. (Narcotics Activity Form, ECF No. 88-3.)

Officer Bray was the affiant on the search warrant affidavit. (Attachment 1.) According to Officer Bray's affidavit, he conducted surveillance on Lockard's home on October 16, 2012, after receiving information from a Confidential Informant ("CI") that Lockard was running an illegal marijuana grow operation. (Deposition of Matthew Bray ("Bray Dep.") 178, ECF No. 87-3 PageID.2191.) Bray states that he observed Lockard drive from his home to conduct what Bray suspected were three narcotics transactions. (Bray Dep. 184:15–206:5, ECF No. 87-3 PageID.2197-2219; Search Warrant Affidavit, ECF No. 87-4 PageID.2269.) Bray contends that he submitted an affidavit to the prosecutor and

obtained a search warrant on October 17, 2012 for Lockard's home. (Search Warrant, ECF No. 87-4 PageID.2268.)

The search warrant indicates that it was signed by 36th District Court Judge Ronald Giles on October 17, 2012. The warrant authorized the police to search Lockard's home and seize controlled substances, money, firearms, paperwork, and other items connected with selling narcotics. (*Id*.) Bray's affidavit and the search warrant indicate that in conducting the surveillance on October 16, 2012, Bray relied on a CI who informed Bray that "narcotics are being stored and also sold by the seller at 1577 Detroit." Bray stated in the affidavit that this "confidential informant has been used by this affiant on past occasions. Furthermore, this confidential informant has provided credible and reliable information in the past that has yielded significant quantities of marijuana, heroin and cocaine." (*Id*.)

Defendants contend they executed the search warrant on Lockard's home on October 17, 2012, by making an unforced entry through the front door after announcing their presence and purpose. After the occupants were secured, and Defendants searched the residence, seizing 76 marijuana plants and a large bag of loose marijuana weighing 1,824 grams. Police also confiscated two handguns, a shotgun, and four medical marijuana cards, one being expired. Lockard had been a licensed operator of a medical marijuana grow facility since roughly 2009 and

admits he was growing marijuana in his home. (Lockard Dep. 30:8–24, ECF No. 87-20 PageID.2371.)

Lockard's deposition on November 20, 2019, stated that as the police were approaching the house, the "shotgun man" wearing a blue ski mask "kicked me in the side" and "forced me to my face"; Lockard was handcuffed. (*Id*., at 35:3–11.) The Police Report identifies Officer Benitez as the "shotgun man" (ECF No. 88-3 PageID.2873.) Lockard's stepdaughter was home at this time and Lockard testified that he "could hear her screaming and hear officers screaming at her"; she was placed in handcuffs. (Lockard Dep. at 39:8–12.)

Lockard testified that he was hit in the face by Officer Bray when he said "something out of line to [the officers]." (*Id*. at 40:10–25.) Lockard describes being "smacked … on the side of the head" and being told to "shut up" by Bray. Lockard describes the contact as "correction smacks," and denies being punched. (*Id*. at 40:25–41:25.)

Lockard testified that he was taken to his bedroom, partially uncuffed and ordered to open his safe. (*Id*. at 44:20–25.) He reportedly refused to open it "because I still hadn't seen a warrant or anything. So they told me, you will open this f***ing safe now." (*Id*.) Sgt. Johnson gave the order to uncuff him. Officer Bray uncuffed one of Lockard's hands. (*Id*. at 45:2–6.) Lockard testified that he was unable to quickly input the correct combination because he was nervous. He testified that Sgt.

Johnson said "if he does any fast move, shoot him," and Lockard "felt a pistol poke into the side of my right kidney." (*Id*. at 45:12–16.) Lockard testified that the police removed a shotgun and two handguns from his safe, along with $230 that he asserts was in an envelope for a payment on his Jeep. (*Id*. at 45:17–46:12.) Lockard was detained during the raid, which he said lasted "for a period of two hours." (*Id*. at 67:15–23.)

Lockard admitted having 56 marijuana plants growing in his home, which he valued at $30,000. Lockard did not dispute police lab sheets that indicated a seizure of 1,824 grams of loose marijuana, although he denied it was usable marijuana, testifying that "it was trash from grow rooms as far as, dead leaves, stems, stubs and unusable marijuana." Lockard was not jailed; he was released at his home.

Officer Bray subsequently submitted a felony arrest warrant request for Lockard to the Wayne County Prosecutor's Office on November 4, 2012. (Criminal docket, ECF No. 87-21.) The warrant, issued on November 7, 2012, was for Lockard's October 17, 2012 drug and weapons possession. (Felony Warrant, ECF No. 87-22.)

About two years later, when Lockard went to the City of Lincoln Park courthouse to "pay a ticket," court staff advised him that he "had an open case there." (Lockard Dep. at 68:18–69:3.) He turned himself in on November 4, 2014, retained

an attorney, and appeared for arraignment in Wayne County Circuit Court on the narcotics charges.

Defendants moved to dismiss these charges. A Wayne County Circuit Court Judge conducted hearings on this matter over several months. Lockard testified that Officer Bray falsified facts in the search warrant and lied, in particular, about the date of the surveillance, and the date of the raid.

Lockard asserts that he submitted evidence, such as timecards and other work-documentation, that convinced the Wayne County Circuit Judge that Lockard was in Indiana for work on the date the surveillance was alleged to have occurred (10/16/2012), and in Ohio on the date of the purported raid (10/17/2012). The Circuit Court Judge concluded that Defendant Bray, the affiant, had falsified critical information in the search warrant affidavit, and granted Lockard's motion to dismiss the charges. (*See* ECF No. 87-23 Motion Hearing Excerpt (9/25/14); ECF No. 87-24 Mot. Hearing Excerpt (11/17/14); ECF No. 88-5 Order Granting Defendant's Motion to Suppress and Dismiss case; ECF No. 88-6, Hearing Trans. (12/4/2015) ("I don't think that the truth was told to the Magistrate, and I don't think that the search warrant was based on the truth. So, I am going to suppress it and dismiss this case.")) The Wayne County Circuit Court Judge relied on testimony by Lockard, as well as documentary evidence, to wit, timecards/spreadsheets which purportedly showed that he was completing a janitorial job out-of-state on October 16, 2012.

7

(*See* Wayne County Motion Hearing Trans. ECF No. 88-6 PageID.2971). Lockard also presented testimony in the Wayne County Circuit Court from his employment supervisor Jeffrey Meschke, who explained the documents that allegedly showed Lockard was completing a job in Indianapolis on the 16th, and that Lockard had told him about the search of his house on the 15th.

## I.    Standard of Review
### a.  Summary Judgment – Fed R. Civ. P. 56

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Express Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

9

In *Alexander*, District Judge David Lawson, sitting by designation at the United States Court of Appeals for the Sixth Circuit, authored an opinion regarding summary judgment that is relevant to the instant case:

> Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make her case with a showing of facts that can be established by evidence that will be admissible at trial … by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial … . The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial … . However, the party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary.

*Id*. (citations and internal quotation marks omitted.)

### III.   Analysis
#### a.  Officer Matthew Bray – Unlawful Search and Seizure

Defendants move for summary judgment on the Plaintiffs' Fourth Amendment claim against Defendant Officer Matthew Bray, the affiant on the search warrant, arguing that Bray is entitled to qualified immunity.

"An action under § 1983 does lie against an officer who obtains an invalid search warrant by making, in his affidavit, material false statements either knowingly or in reckless disregard for the truth." *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir. 1989). Assertions of qualified immunity are evaluated using a two-part

process. First, the facts, taken in the light most favorable to the plaintiff, must demonstrate that the defendants violated the plaintiff's constitutional rights. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). Second, those rights must have been "clearly established at the time of the alleged violation." *Id.* Once a defendant asserts the right, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to [it]." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). As the Supreme Court has observed, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The Supreme Court held in *Pearson v. Callahan,* 555 U.S. 223, 231 (2009), that qualified immunity should be resolved at the "earliest possible stage in litigation." *accord Taylor v. City of Saginaw, Mich., Tabitha Hoskins*, __ F.4th __, No. 20-1538/1588, 2021 WL 3745345 (6th Cir. Aug 25, 2021).

In general, "[t]he right to be free from warrantless searches of one's home is clearly established, as is the right to be free from searches predicated on an officer's intentional or reckless submission of false statements in a warrant affidavit." *McCallum v. Geelhood*, 742 F. App'x 985, 991 n.6 (6th Cir. 2018) (internal citations omitted).

11

In order to find a constitutional violation based on a lack of probable cause due to alleged false statements in a search warrant affidavit, Plaintiffs must make a "substantial preliminary showing" that Bray "knowingly and intentionally, or with reckless disregard for the truth" included a false statement in the warrant affidavit. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). "Allegations of negligence or innocent mistake are insufficient." *Id.* at 171. Whether Lockard makes this initial showing is a question of law for the court. *See Hale v. Kart*, 396 F.3d 721, 726–27 (6th Cir. 2005) ("Therefore, our inquiry is whether the plaintiff made a strong preliminary showing that the affiant intended to mislead the judge.... Only then can we address the question of whether a factual matter related to probable cause exists that would preclude summary judgment.").

Plaintiffs argue that they need not make a "substantial preliminary showing" of false statements in the affidavit, as argued by Defendants. Plaintiffs point to *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998) and *Wyniemko v. Ostin*, 2005 WL 8169287, * 21 (E.D. Mich. 2005). Plaintiffs argue that the requirement for a "substantial preliminary showing" has been limited to cases involving omissions from a warrant application, while here the claim is that Officer Bray "fabricated, entirely, the events of his search warrant." (ECF No. 88 PageID.2841.) The *Mays* court did not make such a distinction. In *Mays*, the court appears to simply be reiterating that this substantial preliminary showing standard also applies to

omissions cases, noting that "we have previously held that the *Franks* doctrine applies to omissions of information from affidavits as well [as false statements]." *Mays*, 134 F.3d at 815.

Plaintiffs' citation to the District Court decision in *Wyniemko* is similarly unavailing. That case does not suggest that a plaintiff alleging false statements in a search warrant affidavit need not make a substantial preliminary showing of falsity to overcome a search warrant's presumption of validity.

Contrary to Plaintiffs' arguments, the Sixth Circuit has applied the "substantial preliminary showing" standard to false statement cases in a similar context. For example, in *Newell v. Wayne Cty*, the court stated that the plaintiff must make a "substantial preliminary showing" that the defendant "knowingly and intentionally, or with reckless disregard for the truth" included a false statement in the warrant affidavit in order to proceed to *Franks*' second step. 733 F. App'x 286, 289–90 (6th Cir. 2018).

The Court will apply the substantial preliminary showing standard. Only if Lockard clears that hurdle does this Court proceed to *Franks*' second step—excising the "material that is the subject of the alleged falsity or reckless disregard." *Franks*, 438 U.S. at 171–72. If the remainder of the affidavit is insufficient to establish probable cause, then the warrant violates the Fourth Amendment. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989). Mere conclusory allegations are insufficient, as

are "[a]llegations of negligence or innocent mistake." *Franks*, 438 U.S. at 171. The

defendant must "point out specifically the portion of the warrant affidavit that is

claimed to be false" and accompany the allegations with an offer of proof. *Id.*

Plaintiffs argue that the search of Lockard's home actually occurred on

October 15, 2012, that Lockard was out of state on October 16, 2012, and that the

October 17, 2012 search warrant was obtained after the October 15th search.

Plaintiffs challenge two critical components of Bray's 2017 warrant affidavit. First,

they challenge the affidavit statement that Officer Bray conducted surveillance on

Lockard at his house on October 16, 2012. (Search Warrant Affidavit, ECF No. 87-

4.) Second, Plaintiffs challenge the affidavit statement that Officer Bray had

received a tip from an unnamed "reliable" CI that Lockard was illegally selling

drugs, and relied on that reliable CI. *Id.* Plaintiffs challenge the existence of that CI,

contending that Defendants have not produced the name of that CI, or introduced

<u>any</u> police department record evidence, apart from Bray's testimony, that such a CI

existed.

### i.  Date of Execution of Search Warrant

Defendants first argue that the Plaintiff's "self-serving" statements that the

raid actually occurred on October 15, 2012, not on October 17, 2012, the date the

warrant was issued, are insufficient to establish a "substantial preliminary showing"

of an intentional falsehood sufficient to overcome the presumption of validity of a
search warrant.

Key to this argument from Defendants is the fact that Plaintiffs are unable to
produce any corroborating records, including timecards from Lockard's place of
work, and testimony from Lockard's work supervisor, that allegedly formed the
basis for the state court *Franks* decision dismissing the case against Lockard, and
thus, at this stage, have not produced any admissible evidence supporting their
argument that the raid occurred on October 15th and not on October 17th.

Defendants further contend that the state court finding of a *Franks* violation
"has no preclusive effect on this litigation, no evidentiary value, nor does not bind
this Court." (ECF No. 87 PageID.2113.) In support of that argument, Defendants
cite the Sixth Circuit unpublished decision in *Burda Bros v. Walsh*, 22 Fed. Appx.
423 (6th Cir. 2001). In *Burda Bros*, a § 1983 action against various state officers
involved in attempts to enforce fireworks restrictions, the plaintiffs had argued that
an earlier state court ruling "conclusively established the lack of probable cause to
obtain … search warrants." *Id*. at 429. The earlier state court order, in a civil action
invalidating the search, was entered against the city government. Regarding the
individual officers being sued in *Burda Bros.*, the court held that "[s]ince the
defendants, sued here in their individual capacities, did not have a personal stake in
the outcome of the earlier proceeding, plaintiffs may not use collateral estoppel

15

offensively to preclude the relitigation of the validity of the search warrant . . . ." *Id.* at 430.

Defendants also cite to *Cosby v. Oakland Cty.*, No. 19-10847, 2020 WL 5768790, at *4 (E.D. Mich. Sept. 25, 2020) (Goldsmith, J.), a federal § 1983 case against individual officers, brought after a state court criminal case where the state court judge found that there was no probable cause for the arrest and dismissed the case. Judge Goldsmith stated:

> The [Cosby] criminal case was prosecuted by the People of the State of Michigan, not by the individual officers, here sued in their individual capacities. Michigan law does not allow criminal defendants turned civil rights plaintiffs to invoke offensive nonmutual collateral estoppel when suing individual officers. *See Lewis v. City of Detroit*, No. 09-cv-14792, 2011 WL 2084067, at *3 (E.D. Mich. May 24, 2011) (citing *Burda Bros. Inc. v. Walsh,* 22 F. App'x 423, 430 (6th Cir. 2011)). Because this Court sits in Michigan, it is obligated to follow that rule, *id.* at *2, and Cosby's attempt to assert offensive non-mutual collateral estoppel must be denied. Having failed to establish the unlawfulness of the arrest in any other manner, Cosby fails to show a violation of his right regarding false arrest, no matter how that right might be defined.

Defendants contend that the federal court decisions in *Burda Bros* and *Cosby* establish that the instant Plaintiffs cannot rely on the state court *Franks* determination to prevent Defendants from asserting, in this Court, the validity of the search warrant.

Plaintiffs, on the other hand, argue that the state court *Franks* decision is admissible evidence that demonstrates a question of material fact regarding the validity of the search warrant. Plaintiffs cite to Fed. R. Evid. 201, Fed. R. Evid. 803(8), *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988), and *Complaint of Paducah Towing Co., Inc*., 692 F.2d 412, 420 (6th Cir. 1982).

Fed. R. Evid. 201(b), Judicial Notice of Adjudicative Facts, states that the "court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." In this case, there is clearly a reasonable dispute as to whether the warrant affidavit was valid, and whether its accuracy was established in this federal Court by Plaintiff's uncorroborated testimony.

Fed. R. Evid. 803(8) provides in part:

The following are not excluded by the rule against hearsay…

**(8) Public records.** A record or statement of a public office if:
**(A)** it sets out:
 **(i)** the office's activities;
 **(ii)** a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
 **(iii)** in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
**(B)** the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

In *Complaint of Paducah Towing,* 692 F.2d 412, 420 (6th Cir. 1982), an admiralty action, the United States Court of Appeals for the Sixth Circuit upheld the District Court's admission of factual findings of an ALJ who presided at a federal court license revocation proceeding. The Court of Appeals deemed the ALJ's findings to be "factual" within the meaning of Fed. R. Evid. 803(8), citing to *Baker v. Elcona Homes Corp*., 588 F.2d 551, 557 (6th Cir. 1978), where the court had ruled that a police report with factual findings regarding whether a traffic light was red or green during an incident was admissible under Fed. R. Evid. 803. In *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988), the Supreme Court held that Fed. R. Evid. 803(8) allows for the admission of reports containing opinions and conclusions as falling within the scope of FRE 803(8) such that they aren't inadmissible hearsay. That case was considering whether a Navy investigation of a crash was admissible in court and did not consider whether a prior judicial determination, in another jurisdiction, in a case not involving the instant defendant, came within Fed. R. Evid. 803(8).

The Court concludes that these rules of evidence, and the cited cases, do not support Plaintiffs' argument that the prior judicial determination by a Wayne County Circuit Court Judge at a *Franks* hearing is admissible evidence, in particular, because Defendant Bray was not a party to that proceeding. A judicial determination in a

prior state court criminal case does not comprise "factual findings from a legally authorized investigation" as contemplated by Fed. R. Evid. 803(8).

On the other hand, the Plaintiffs point to the evidence presented during Lockard's state court *Franks* hearing—Plaintiff's testimony, co-workers' testimony, and documents from Plaintiffs' place of work that showed that he was out of town for work on October 16, 2012, the date that Bray stated in his affidavit that he observed Lockard perform three suspected drug deals from his home.

While the transcripts of the Wayne County hearing are not admissible in this case, "[t]he submissions by a party opposing a motion for summary judgment need not themselves by in a form that is admissible at trial." *Alexander*, 576 F.3d at 558. Plaintiff specifies that he will provide admissible testimony by himself and his co-worker at this trial establishing that he was out of town on October 16, 2012, and thereby establish the falsity of Bray's critical statements regarding his surveillance on that date.

Defendants attach several records to their Motion for Summary Judgment to corroborate their claim that the search occurred on October 17, 2012. (Motion for Summary Judgment, ECF No. 85 PageID.1381 (listing records).) A DPD Narcotics squad Search Warrant Deconfliction Sheet, dated October 16, 2012, documenting that notice was provided to the Lincoln Park Police Department that Detroit officers would be executing a search warrant in their city on the following day, October 17,

2012. (ECF No. 87-7.) Defendants further provide documents from the Office of High Intensity Drug Trafficking Areas ("HIDTA"), establishing that Officer Bray informed that agency, on October 16, 2012, that Detroit Police would be entering Lincoln Park the following day, October 17, 2012. (ECF No. 87-6.) Defendants also produce lab records that show the marijuana seized from Lockard's home was tested on October 17, 2012. (ECF No. 87-7 PageID.2295.) The search warrant, approved by the assistant prosecutor on October 16, 2012, was signed by the Judge on October 17, 2012. (ECF No. 87-4.)

Defendants also provide a DPD CRISNET Report containing an assigned case number of 1210170347, which Defendants contend is automatically generated by software, indicating that the search warrant execution occurred on October 17, 2012: "[t]he first two digits represent the year (2012) the next two digits represent the month (October), the next two digits represent the day of the month (17)." (Mot. for Sum. Judg., ECF No. 87 PageID.2115, citing DPD Arrest Report, ECF No. 87-8, PageID.2284.)

The Court concludes that while Defendants' argument and records will contest Plaintiffs' claims at trial, Plaintiff Lockard has made the necessary substantial preliminary showing that there are questions of material fact that undermine the probable cause showing in Bray's affidavit: false statements regarding his surveillance of Lockard on October 16th, and the date of the raid.

## ii.  Confidential Informant

Plaintiffs also contend that Defendants cannot rely upon the assertion in Bray's search warrant affidavit allegedly provided by the CI that Lockard was selling drugs to establish probable cause, because Defendant Bray cannot identify the CI, despite his averments in the affidavit that he had used that "reliable" CI "on past occasions." (ECF No. 88 PageID.2844.) Plaintiff further notes that Defendants did not produce <u>any</u> internal DPD documents regarding Bray's use of this unnamed informant on multiple occasions.

Plaintiffs also point to testimony (taken in May 2020 as part of an Internal Affairs investigation into the narcotics department) from former Detroit Police Department Deputy Chief Fitzgerald who stated that an officer "should have knowledge of who that CI is, and that an officer's inability to identify or recall a CI raises the question "is there truly a CI?" (ECF No. 88 PageID.2845; Audio Recording of Deputy Chief Fitzgerald, May 29, 2020, ECF No. 88-13.) Plaintiffs also identify the lack of any "surveillance logs," notes, or other similar documents that confirm that any surveillance was conducted of Lockard's home on October 16, 2012, as well as a lack of an "appearance notice" from October 17, 2012, at the courthouse. (ECF No. 88 PageID.2845.)

Defendants argue that the unsworn 2020 interview of Deputy Chief Fitzgerald regarding confidential informants is inadmissible. The testimony was taken during

an investigation unrelated to the facts of this case, and does not speak to the existence of the CI in this particular case. Even if it is admissible as pursuant to an investigation made pursuant to authority granted by law, per Fed. R. Evid. 803(8)(C), its generality, rather than specificity to this case undermines its relevance.

Plaintiffs cite to two other currently pending cases where Officer Bray is alleged to have provided false information on an affidavit and failed to produce the identity of a confidential informant/Source of Information ("SOI"). *See Frontczak v. Bray and City of Detroit*, Case No. 18-13781 (E.D. Mich.) (Cleland, J.) and *McGee v. Bray and City of Detroit*, Case No. 20-12367 (E.D. Mich.) (Drain, J.). However, the relevance of these cases to the issue at hand is limited. First, *McGee* alleges violations of the plaintiff's Fourth Amendment rights stemming from an arrest by Officer Bray in May, 2017, five years after the events at issue in this case. Second, in *Frontczak*, in ruling on a motion to compel the deposition of the SOI, the court held, "[a]t its core, Plaintiff's argument in support of disclosure is that because Detroit police officers submitted false affidavits in other cases then so too does it stand to reason that the instant affidavit contains falsities. But such conclusory assertions are insufficient to overcome the "presumption of validity" afforded to affidavits." *Frontczak* 2020 WL 3000576, at *4. Similar reasoning applies in this case, and the evidence presented by Lockard is insufficient to make

the necessary strong preliminary showing that the tip from the CI was false, so as to excise the CI tip from the search warrant affidavit.

However, in this case, the affidavit states some boilerplate detail regarding the CI's reliability and the specific information reported by the CI. Further, its inclusion in an affidavit which Plaintiffs have made a substantial showing contains non-truthful critical claims regarding the dates of the corroboration and the raid, lead the Court to conclude that the remaining information in the affidavit supports the Court's denial of qualified immunity to Officer Bray.

An officer who obtains a search warrant by making materially false statements in the affidavit on which the warrant is based may be liable to a plaintiff injured by the warrant if plaintiff demonstrates that (1) the officer made the false statements knowingly and intentionally or with a reckless disregard for the truth *and* (2) setting aside the false statements, the remainder of the affidavit is insufficient to establish probable cause. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989). The Sixth Circuit has held that "[i]n general, a determination of whether there was probable cause for a search which gave rise to a § 1983 action is a question to be determined by a jury unless there is only one reasonable determination." *Yancey v. Carroll Cty., Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989).

In the instant case, Plaintiffs have satisfied the preliminary showing that there is a question of material fact regarding the falsity of Officer Bray's statements in the

search warrant concerning his surveillance of Lockard on October 16, 2012, but Plaintiffs failed to make that preliminary showing with regard to his statements about the confidential informant.[2]

Nevertheless, the Court finds that, excising from the warrant affidavit Officer Bray's critical statements regarding his purported surveillance of Lockard's alleged drug dealing on October 16, 2012, a reasonable juror could determine that the warrant affidavit did not establish probable cause and the Judge would not have signed the warrant based on the remaining information.

This case will proceed to trial on Plaintiffs' claim against Officer Bray of a violation of their Fourth Amendment Constitutional right to be free from unlawful search and seizure without probable cause. Accordingly, Defendants' Motion for Summary Judgment on the Fourth Amendment claim against Officer Bray is DENIED.

### b. Defendant Reginald Beasley

In their Motion for Summary Judgment and Dismiss, Defendants move to dismiss the claim against Beasley under Fed. R. Civ. P. 12(c), arguing there are no specific allegations against him, and for summary judgment under Fed. R. Civ. P.

---

[2] The Court notes that Bray's boilerplate "reliable and credible" designation of the multiple-use confidential informant is undermined by Bray's inability to identify such a person, and the inability to produce any police records of such use.

56, arguing that police officers who merely participate in the execution of a judicially authorized search warrant are entitled to qualified immunity. Dismissal of Beasley is appropriate on either ground.

In a §1983 case, "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). There are no specific allegations against Defendant Beasley in the Complaint. Because this Court is unable to draw an inference that Defendant Beasley is liable for any alleged misconduct, Plaintiff's Fourth Amendment claim against Beasley is dismissed pursuant to Fed. R. Civ. P. 12(c).

Further, Police officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable. *Yancey v. Carroll Cty., Ky.,* 876 F.2d 1238, 1243 (6th Cir. 1989) citing *Malley v. Briggs,* 475 U.S. 335 (1986). In this case, Defendant Beasley was not deposed and there is no other basis for this Court to determine that Beasley's reliance on the judicially authorized warrant in this case was unreasonable. Dismissal of Beasley is appropriate under Fed. R. Civ. P. 56.

Accordingly, Plaintiffs' claims against Beasley are DISMISSED.

### IV.    Municipal Liability - *Monell* Claim

Plaintiffs argue that the *Monell* claim against the City should proceed to trial because there is evidence that the City knew or should have known about corruption and theft relating to the execution of search warrants in the narcotics department prior to the raid on Lockard's home. Plaintiff contends that he "intends to proceed on his *Monell* claim based on the City's custom or tolerance or acquiescence of federal rights violations." (ECF No. 88 PageID.2850.)

Plaintiff points to the testimony of former drug dealer Gary Jackson, who testified for the Government at the criminal trial of DPD officers Hansberry and Watson. (*Id*., at PageID.2850-51.) But Hansberry and Watson are not involved in the instant case.

The Court concludes that the unrelated criminal conduct of Detroit Police narcotics officer David Hansberry, Bryan Watson, and Arthur Leavells, who were charged with stealing kilos of cocaine and millions of dollars from drug dealers, and Leavells was also charged with lying on affidavits in support of search warrants. *Ultra vires* criminal acts cannot create liability for their employer, the City of Detroit. There is no *respondeat superior* liability under 28 U.S.C. § 1983.

Nor is there evidence that either former DPD Police Chief James Craig, or former DPD Chief Ralph Goodbee, knew of and ignored corruption within the DPD's narcotics unit during their respective terms.

The Court cannot consider events that occurred either contemporaneously to or years after the search of Plaintiff's house in October 2012. *Connick v. Thompson*, 563 U.S. 51, 60, 63 n.7 (2011) ("contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the [municipality] and the opportunity to conform to constitutional dictates.") *accord, Berry v. Del. Cty. Sheriff's Office,* 796 Fed. App'x 857, 862-63 (6th Cir. 2019).

Defendants point out that Chief Goodbee testified in the *Metris-Shamoon* case that he first learned of the 2015 indictments on the news and that he had no knowledge of corruption in the narcotics unit while he was chief. (ECF No. 93 PageID.3834 citing Goodbee Dep. ECF No. 87-27 PageID. 2653-54, 2659-60.) Chief Craig testified in his deposition that he had no knowledge of criminal activity in the narcotics unit in particular until the FBI informed him of the impending indictments in late 2014. (Craig Dep. 25:12-27:21, ECF No. 88-33 PageID.3337.)

The Court concludes that the snippets of interviews with former police officials regarding police misconduct do not establish the necessary evidence relating to this case, relating to his time, that an official with final decision-making authority ratified these illegal actions, nor establish the existence of a policy of inadequate training or supervision, or the tolerance or acquiescence of federal rights violations. *Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir. 2013). Defendants' Motion for Summary Judgment on the *Monell* claim is GRANTED.

27

## V.     Conclusion

This Court Concludes that the Defendants' Motion for Summary Judgment and to Dismiss (ECF No. 87) is:

(1) DENIED as to the Fourth Amendment claim against Defendant Matthew Bray;

(2) GRANTED as to the Fourth Amendment claim against Defendant Reginald Beasley; and

(3) GRANTED the Municipal Liability *Monell* claim against the City of Detroit.

SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: August 31, 2021

STATE OF MICHIGAN                                    SS   AFFIDAVIT AND SEARCH
WARRANT                          120024?.
COUNTY OF WAYNE

**TO THE SHERIFF OR ANY PEACE OFFICER OF SAID COUNTY: P.O. Matthew Bray**

Affiant, having subscribed and sworn to an Affidavit for Search Warrant, and I having under oath examined affiant, am satisfied that probable cause exists:

*THEREFORE IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN, I COMMAND THAT YOU SEARCH THE FOLLOWING DESCRIBED PLACE:* the entire premises and curtilage of **1577 DETROIT**. This location is described as a one story ranch single family unit having its address clearly marked on the front of the location. The dwelling is red brick, and located on the south side of the street between ALPER and GREEN, located in the City of Lincoln Park, County of Wayne, and State of Michigan. (**Hereafter referred to as the target)**

Also to be searched is the **Douglas Crieg Lockard W/M 10-23-73 (hereafter referred to as the seller)**.
Note: Sellers often change; a different seller might be present during the time of execution.

And to seize, tabulate and make return, according to the law the following property, or items: All controlled substances, all monies, safe deposit box keys, all vehicles used to store or transport illegal narcotics, all electronic pagers/beepers, communication equipment and all numbers stored/received therein, all assets and property related to narcotic trafficking, computers, computer equipment, books and records used in connection with illegal narcotics trafficking, all equipment and supplies used in the manufacture, delivery, sale or use of controlled substances, all firearms, video/surveillance equipment used to protect the trade and in connection with the above described activities; all items which prove ownership, occupancy, possession or control of the premises.

*THE FOLLOWING FACTS ARE SWORN TO BY AFFIANT IN SUPPORT OF THE ISSUANCE OF THIS WARRANT.* The affiant is a sworn member of the Detroit Police Department, currently for eight (8) years. Affiant is assigned to the Narcotics Division and is currently conducting an investigation into the sales of illicit drugs at the above location.

12002477

Subscribed and sworn before me and issued under my hand this 17th day of October 2012.

_____
AFFIANT

_Stephanie Zenger_ P#66019                    _____

**Assistant prosecuting Attorney**                **JUDGE/MAGISRATE** 3rd **Circuit/36th**
**Wayne County Prosecutors Office**                **District Court, Wayne County Wayne**
Via Phone 10-16-12 6:20pm

HONORABLE RONALD CILER

Lockard000001

STATE OF MICHIGAN      12002477      **SEARCH WARRANT AFFIDAVIT**
COUNTY WAYNE   SS

On 10/16/12 the affiant received confidential information from a credible and reliable unregistered confidential informant, regarding illegal narcotics, which are being stored and sold from 1577 Detroit, in the City of Lincoln Park, County of Wayne, and State of Michigan. The confidential informant stated that narcotics are being stored and also sold by the seller at 1577 Detroit. This confidential informant has been used by this affiant on past occasions. Furthermore, this confidential informant has provided credible and reliable information in the past that has yielded significant quantities of Marijuana, heroin and cocaine.

The confidential informant stated that he/she was inside of 1577 Detroit within the past 24 hours and observed large amounts of marijuana and cocaine being sold and stored at 1577 Detroit. The informant also stated that an illegal marijuana grow operation was also being conducted at the location. The confidential informant further provided affiant with the name of the seller. The confidential informant provided affiant with the description of a vehicle used in the sellers narcotics trade. A newer model White Pontiac Grand Prix. The confidential informant also stated to affiant that the seller is very nervous of police activity, and if any vehicles or persons are stopped in connection with the target location that the seller will move or destroy evidence.

Affiant armed with information on the described seller and the target location conducted a L.E.I.N. work-up on the target. Affiant discovered that the described seller is registered with the Michigan Secretary of State at the target location.

On 10/16/12 affiant set up surveillance at the target location for approximately two hours. Upon arriving at the target location affiant observed the described vehicle at the target location which had a Michigan license plate of BSH3649. Affiant conducted a L.E.I.N. check of the vehicle and discovered that the described seller was registered to the vehicle. During the course of the surveillance affiant observed (3) Transactions.

Transaction #1: The seller appeared from the front door of the target location. The seller entered the described white Pontiac. The seller left the location and drove to Porter / London in the city of Lincoln Park. The seller met with a W/M driving a yellow mustang. The seller and the buyer engaged in a hand to hand narcotics transaction through the driver window of the sellers car where the seller provided the buyer a green leafy substance in a clear z/l and the buyer provided the seller with paper currency. The buyer left the location and the seller returned to the target location in his vehicle.

12002477

Subscribed and sworn before me and issued under my hand this 17th day of October, 2012

_____
AFFIANT

Stephanie Zeigen P#66019
**Assistant prosecuting Attorney**
**Wayne County Prosecutors Office**
1/n 01 10-16-12 6:2 cm

HONORABLE RICARDO GILES
JUDGE/MAGISRATE 3rd Circuit/36th
**District Court, Wayne County, Wayne**

Locka52d008002

Transaction #2: The seller appeared from the front door of the target location. The seller entered the described white Pontiac. The seller left the location and drove to Omaha / Fort in the city of Detroit. The seller met with a B/M driving a blue conversion van. The seller and the buyer engaged in a hand to hand narcotics transaction through the driver window of the sellers car where the seller provided the buyer an item in a overhand closed fist and the buyer provided the seller with paper currency. The buyer left the location and the seller returned to the target location in his vehicle.

Transaction #3: The seller appeared from the front door of the target location. The seller entered the described white Pontiac. The seller left the location and drove to Elsmere / Fulton in the city of Detroit. The seller met with a W/M driving a tan Toyota. The seller and the buyer engaged in a hand to hand narcotics transaction through the driver window of the sellers car where the seller provided the buyer a green leafy substance in a clear z/l and the buyer provided the seller with paper currency. The buyer left the location and the seller returned to the target location in his vehicle.

The affiant has been conducting narcotic investigations for several years. This type of described activity is very consistent with that of someone who is engaged in illegal narcotic trafficking. It is not uncommon for illegal narcotic traffickers to conduct business at one location and reside at another.

The affiant has participated in over 200 narcotic investigations, in the overwhelming majority of these investigations illegal firearms were found, used to protect the seller's while conducting illegal narcotic sales and Affiant seeks to remove these weapons.

Wherefore, Affiant has probable cause to believe that the listed seller and items will be found at 1577 Detroit, Affiant seeks to remove the same.

**Subscribed and sworn before me and issued under my hand this 17th day of October, 2012**

_____
AFFIANT

_____
Stephanie Zeiger P#66019
**Assistant prosecuting Attorney**
**Wayne County Prosecutors Office**
Via Phone 10-16-12 6:20pm

_____
**JUDGE/MAGISRATE 3rd Circuit/36th**
**District Court, Wayne County Wayne**

12002477 HONORABLE RONALD GILES

Lockard000003

*I, hereby certify and return that by virtue of the within <u>Search Warrant</u> to be directed. I have searched for the goods and chattels therein named, at the place therein described.*
    *Strike either (1) or (2) whichever is applicable.*

(1) and that I have such goods and chattels before the court, described as follows:

1: (1) Shotgun Smith & Wesson SN# F500748

2: (1) Silver Digital Scale & numerous sandwich bags

3: (POR) for Douglas Lockard

4: MARIJUANA

5: (3) Michigan Medical Marihuana Cards

6: (1) Expired Medical Marihuana Card expired 1-1-2012

7: (1) Ruger Handgun SN# 173-85335 .357 Magnum

8: (1) BSA Ruger SN# 370-26424

9: _____

10: _____

11: _____

12: _____

13: _____

14: _____

15: _____

16: _____

(2) and that I have been unable to find such goods and chattels

THIS 17th DAY OF October 2012 AT 4:00 AM/**PM**

ADDRESS: 1577 Detroit Ave Lincoln Park DETROIT, MICHIGAN

MUNICIPAL POLICE OFFICER: R. Johnson

Lockard000004