UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS LOCKARD and
ADAM SANTIAGO,

                Plaintiffs,

v.

MATTHEW BRAY,

                Defendant.

_____/

Case No. 18-cv-13045

Paul D. Borman
United States District Judge

## OPINION AND ORDER REGARDING PLAINTIFFS' AND DEFENDANT'S MOTIONS IN LIMINE (ECF NOS. 125, 126, 127, 128, 129 AND 130)

This case arises out of the execution of a search warrant in October 2012 by Detroit Police Department (DPD) officers at the home of Plaintiff, Douglas Lockard. Plaintiffs Lockard, and his step-son, Adam Santiago, filed this lawsuit alleging that they were subject to an illegal search and seizure of their home without probable cause, and asserting claims under the Fourth and Fourteenth Amendments against individual police officers, as well as a municipal liability claim against the City of Detroit. After the Court's rulings on Defendants' dispositive motions, including the dismissal of the *Monell* claim against the City of Detroit, the only remaining Defendant is Sgt. Matthew Bray, and the only remaining claim is Plaintiffs' Fourth Amendment search and seizure claim.

On November 16, 2021, the Court issued a Pretrial Civil Case Scheduling Order, setting a briefing schedule for filing Motions in Limine, and setting a Final Pretrial Conference date of May 25, 2022, with a Trial date to be determined. Now before the Court are three motions in limine filed by Defendant (ECF Nos. 125, 126, 127) and three motions in limine filed by Plaintiff (ECF Nos. 128, 129, 130), all of which have been fully briefed. The Court does not believe that oral argument will aid in its disposition of the motions; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons that follow, the Court: (1) DENIES Defendant's motion in limine to preclude evidence suggesting the confidential informant relief upon by Defendant Bray was falsified (ECF No. 125), (2) GRANTS Defendant's motion in limine to preclude reference at trial to Plaintiff's criminal case's *Franks* hearing (ECF No. 126), (3) GRANTS IN PART and DENIES IN PART Defendant's motion in limine to preclude evidence of other purported acts (ECF No. 127), (4) DENIES Plaintiffs' motion in limine to admit similar acts evidence (ECF No. 128), (5) DENIES Plaintiffs' motion in limine to admit statements of agents of Defendant City of Detroit (ECF No. 129), and (5) DENIES Plaintiff's motion in limine to admit *res gestae* facts (ECF No. 130).

# I.  BACKGROUND

## A.    Factual Background

The date of the execution of the search warrant on Lockard's home is disputed. According to the Plaintiffs, the narcotics raid took place on Monday, October 15, 2012 around 3:15 p.m. (Deposition of Plaintiff Douglas Lockard, (Lockard Dep.) p. 26, ECF No. 87-20.) Defendant claims the raid occurred on Wednesday, October 17, 2012.

Former Defendant Sgt. Rodger Johnson served as the Officer-In-Charge of the raid on Lockard's home, and was assisted in the execution of the search warrant by Defendant Matthew Bray and former Defendants Radames Benitez, Tiffany McCrackin, Cedric Coleman, Damon Kimbrough, and Leo Rhodes. (Narcotics Activity Form, ECF No. 88-3.)

Defendant Bray was the affiant on the search warrant affidavit. (Search Warrant Affidavit, ECF No. 87-4 PageID.2268-71.) According to Bray's affidavit, he conducted surveillance on Lockard's home on October 16, 2012, after receiving information from a Confidential Informant (CI) that Lockard was running an illegal marijuana grow operation. (Deposition of Matthew Bray (Bray Dep.) p. 178, ECF No. 87-3 PageID.2191.) Bray states that he observed Lockard drive from his home to conduct what Bray suspected were three narcotics transactions. (Bray Dep.

3

184:15–206:5, ECF No. 87-3 PageID.2197-2219; Search Warrant Affidavit, ECF No. 87-4 PageID.2269.) Bray contends that he submitted an affidavit to the prosecutor and obtained a search warrant on October 17, 2012 for Lockard's home. (Search Warrant, ECF No. 87-4 PageID.2268.)

The search warrant indicates that it was signed by 36th District Court Judge Ronald Giles on October 17, 2012. (*Id.*) The warrant authorized the police to search Lockard's home and seize controlled substances, money, firearms, paperwork, and other items connected with selling narcotics. (*Id.*) Bray's affidavit and the search warrant indicate that in conducting the surveillance on October 16, 2012, Bray relied on a confidential informant (CI) who informed Bray that "narcotics are being stored and also sold by the seller at 1577 Detroit." (Search Warrant Affidavit PageID.2269.) Bray stated in the affidavit that this "confidential informant has been used by this affiant on past occasions. Furthermore, this confidential informant has provided credible and reliable information in the past that has yielded significant quantities of marijuana, heroin and cocaine." (*Id.*)

Defendant Bray contends that he and the DPD narcotics team executed the search warrant on Lockard's home on October 17, 2012, by making an unforced entry through the front door after announcing their presence and purpose. After the occupants were secured, the officers searched the residence, seizing 76 marijuana

plants and a large bag of loose marijuana weighing 1,824 grams. Police also confiscated two handguns, a shotgun, and four medical marijuana cards, one being expired. Lockard had been a licensed operator of a medical marijuana grow facility since roughly 2009 and admits he was growing marijuana in his home. (Lockard Dep. 30:8–24, ECF No. 87- 20 PageID.2371.)

Lockard's deposition on November 20, 2019, stated that as the police were approaching the house, the "shotgun man" wearing a blue ski mask "kicked me in the side" and "forced me to my face;" Lockard was handcuffed. (*Id*., at 35:3–11.) The Police Report identifies Officer Benitez as the "shotgun man" (ECF No. 88-3 PageID.2873.) Lockard's stepdaughter was home at this time and Lockard testified that he "could hear her screaming and hear officers screaming at her;" she was placed in handcuffs. (Lockard Dep. at 39:8–12.)

Lockard testified that he was hit in the face by Defendant Bray when he said "something out of line to [the officers]." (*Id*. at 40:10–25.) Lockard describes being "smacked … on the side of the head" and being told to "shut up" by Bray. Lockard describes the contact as "correction smacks," and denies being punched. (*Id*. at 40:25–41:25.)

Lockard testified that he was taken to his bedroom, partially uncuffed and ordered to open his safe. (*Id*. at 44:20–25.) He reportedly refused to open it "because

I still hadn't seen a warrant or anything. So they told me, you will open this f***ing safe now." (*Id*.) Sgt. Johnson gave the order to uncuff him. Defendant Bray uncuffed one of Lockard's hands. (*Id*. at 45:2–6.) Lockard testified that he was unable to quickly input the correct combination because he was nervous. He testified that Sgt. Johnson said "if he does any fast move, shoot him," and Lockard "felt a pistol poke into the side of my right kidney." (*Id*. at 45:12–16.) Lockard testified that the police removed a shotgun and two handguns from his safe, along with $230 that he asserts was in an envelope for a payment on his Jeep. (*Id*. at 45:17–46:12.) Lockard was detained during the raid, which he said lasted "for a period of two hours." (*Id*. at 67:15–23.)

Lockard admitted having 56 marijuana plants growing in his home, which he valued at $30,000. Lockard did not dispute police lab sheets that indicated a seizure of 1,824 grams of loose marijuana, although he denied it was usable marijuana, testifying that "it was trash from grow rooms as far as, dead leaves, stems, stubs and unusable marijuana." Lockard was not jailed; he was released at his home.

Defendant Bray subsequently submitted a felony arrest warrant request for Lockard to the Wayne County Prosecutor's Office on November 4, 2012. (Criminal docket, ECF No. 87-21.) The warrant, issued on November 7, 2012, was for

Lockard's October 17, 2012 drug and weapons possession. (Felony Warrant, ECF No. 87-22.)

About two years later, when Lockard went to the City of Lincoln Park courthouse to "pay a ticket," court staff advised him that he "had an open case there." (Lockard Dep. at 68:18–69:3.) He turned himself in on November 4, 2014, retained an attorney, and appeared for arraignment in Wayne County Circuit Court on the narcotics charges.

Defendants moved to dismiss these charges. A Wayne County Circuit Court Judge conducted hearings on this matter over several months. Lockard testified that Defendant Bray falsified facts in the search warrant and lied, in particular, about the date of the surveillance, and the date of the raid.

Lockard asserts that he submitted evidence to the Circuit Court, such as timecards and other work documentation, that convinced the Wayne County Circuit Court Judge that Lockard was in Indiana for work on the date the surveillance was alleged to have occurred (10/16/2012), and in Ohio on the date of the purported raid (10/17/2012). The Circuit Court Judge concluded that Defendant Bray, the affiant, had falsified critical information in the search warrant affidavit, and granted Lockard's motion to dismiss the charges. (See ECF No. 87-23 Motion Hearing Excerpt (9/25/14); ECF No. 87- 24 Mot. Hearing Excerpt (11/17/14); ECF No. 88-

5 Order Granting Defendant's Motion to Suppress and Dismiss case; ECF No. 88-6, Hearing Trans. (12/4/2015) ("I don't think that the truth was told to the Magistrate, and I don't think that the search warrant was based on the truth. So, I am going to suppress it and dismiss this case.")) The Wayne County Circuit Court Judge relied on testimony by Lockard, as well as documentary evidence, to wit, timecards/spreadsheets which purportedly showed that Lockard was completing a janitorial job out-of-state on October 16, 2012. (See Wayne County Motion Hearing Trans. ECF No. 88-6, PageID.2971). Lockard also presented testimony in the Wayne County Circuit Court from his employment supervisor, Jeffrey Meschke, who explained the documents that allegedly showed Lockard was completing a job in Indianapolis on the 16th, and that Lockard had told him about the search of his house on the 15th.

### B.  Procedural Background

The instant action arose as one of five cases from a failed class action lawsuit against the City of Detroit and individual officers that was denied class certification by this Court.[1] *Davis v. City of Detroit*, No. 15-10547, 2018 WL 4179316 (E.D.

---

[1] In addition to the instant case, these lawsuits include: *Reid v. City of Detroit, et al.*, No. 18-13681; *Frontczak/McShane v. City of Detroit, et al.*, No. 18-13781; *Gardella v. City of Detroit, et al.*, No. 18-13687; and *Metris-Shamoon v. City of Detroit, et al.*, No. 18-13683.

Mich. Aug. 31, 2018). Plaintiff Douglas Lockard and his son Adam Santiago filed this independent section 1983 action on September 28, 2018. (ECF No. 1.) Plaintiffs asserted claims against 15 DPD officers and the City of Detroit for violations of Plaintiffs' Fourth and Fourteenth Amendment Rights and a *Monell* claim against the City of Detroit.

The parties have since stipulated to the dismissal of Defendants Stephen Geelhood, Larry Barnett, Arthur Leavells, Amy Matelic, Steven Riley, Brian Johnson, and Charles Flanagan. (ECF No. 30.) Plaintiffs agreed to dismiss their 14th Amendment claim (ECF No. 87, PageID.2096-97), and the Court entered an Order dismissing Defendants Radames Benitez, Rodger Johnson, Tiffany McCrackin, Cedric Coleman, Damon Kimbrough, and Leo Rhodes. (ECF No. 116.) After this Court's rulings on dispositive motions, which included dismissal of Plaintiffs' *Monell* claim against the City of Detroit, the only remaining Defendant is Defendant Bray and the only remaining claim is Plaintiffs' claim against Bray of a violation of their Fourth Amendment constitutional right to be free from unlawful search and seizure without probable cause. (ECF Nos. 119, 120.)

## II.  LEGAL STANDARD

District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991).

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4, (1984); *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999) ("The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures – including motions *in limine* – in order to narrow the issues remaining for trial and to minimize disruptions at trial.").

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983). It is a procedural vehicle "to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). "[A] preliminary ruling allows the parties to consider the court's ruling in formulating their trial strategy." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Motions *in limine* may promote "evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio

2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The rules regarding relevancy, however, are quite liberal[.]" *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998). Under the Federal Rules of Evidence, "[e]vidence is relevant ... if it has *any* tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). The court is not "permitted to consider the weight or sufficiency of the evidence in determining relevancy and 'even if [it] believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth.'" *Robinson*, 149 F.3d at 512 (quoting *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992)).

Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is inadmissible "if there is a danger of *unfair* prejudice, not mere prejudice." *Robinson*, 149 F.3d at 514-15 (emphasis in original) (citing Fed. R. Evid. 403). The court has "very broad discretion in making this

11

determination." *United States v. LaVictor*, 848 F.3d 428, 444 (6th Cir. 2017) (quoting *United States v. Semrau*, 693 F.3d 510, 523 (6th Cir. 2012)).

## III.  ANALYSIS

**A.**   **Defendant's Motion in Limine to Preclude Evidence Suggesting the Confidential Informant Relied Upon by Defendant Bray was Falsified (ECF No. 125) [Def.'s MIL No. 1]**

Defendant argues in his motion in limine that, after this Court's rulings on Defendants' dispositive motions, "the only remaining issue is whether the date of the surveillance and search was falsified by Sgt. Bray in his warrant affidavit and police reports." (ECF No. 125, Def.'s MIL No. 1, PageID.4382-83.) Defendant contends that this Court "ruled Plaintiff had not made a substantial preliminary showing that Sgt. Bray falsified his statements regarding his confidential informant ("CI") as required by *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)," and "[t]hus, there was no question of material fact on that issue." (*Id.* PageID.4383, citing ECF No. 120, PageID.4359.) Defendant requests that the Court "prohibit any evidence or argument suggesting Defendant Bray's warrant affidavit was falsified as it related to his confidential informant." (*Id.* PageID.4384.)

Plaintiffs assert in their Response brief that their Fourth Amendment claim is based on their allegations that "Bray fabricated his search warrant affidavit by (1) claiming he conducted surveillance which Plaintiffs contend never occurred; (2) that

12

Bray's alleged use and/or reliance upon a confidential informant was fabricated; and

(3) that Bray obtained his search warrant two days after the raid and in an effort to

conceal the illegality of the raid." (ECF No. 132, Pls.' Resp. PageID.4458-59.)

Plaintiffs argue that the question of whether Bray had probable cause "focuses

entirely on the four corners of his affidavit" and "[i]ncluded in the 'four corners' of

Bray's affidavit is his averments that he relied on a confidential informant." (*Id.*

PageID.4459.) Plaintiffs contend that it is for the jury to decide whether "Bray's

averments in the affidavit and his inability to identify the informant (or provide any

documents and/or details regarding the informant)" "were falsified in order to

establish probable cause." (*Id.* PageID.4459-60.)

Defendant argues in his Reply brief that this Court has previously determined

that Plaintiff did not make a substantial preliminary showing that the warrant was

falsified as it relates to the CI, and that "Sgt. Bray is therefore immune from that

claim." (ECF No. 139, Def.'s Reply.)

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court

held that a defendant is entitled to a veracity hearing to attack the basis for a search

warrant's statement of probable cause when the defendant makes "a substantial

showing that a false statement knowingly and intentionally, or with reckless

disregard for the truth, was included by the affiant in the warrant affidavit, and …

13

the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155. The Court explained that while there exists "a presumption of validity with respect to the affidavit supporting the search warrant[,] this presumption could be overcome with a sufficient offer of proof." *Id.* at 171.

This Court, in its Opinion and Order Granting in Part Defendants' Motion for Summary Judgment (ECF No. 120), found that "the evidence presented by Lockard [that Bray cannot identify the CI, despite his averments in the affidavit that he had used that "reliable" CI "on past occasions"] is insufficient to make the necessary strong preliminary showing that the tip from the CI was false, *so as to excise the CI tip from the search warrant affidavit*." (ECF No. 120, PageID.4357-58 (emphasis added).) The Court went on to state:

> However, in this case, the affidavit states some boilerplate detail regarding the CI's reliability and the specific information reported by the CI. Further, its [the CI information] inclusion in an affidavit which Plaintiffs have made a substantial showing contains non-truthful critical claims regarding the dates of the corroboration and the raid, lead the Court to conclude that the remaining information in the affidavit supports the Court's denial of qualified immunity to Officer Bray.
>
> \*\*\*
>
> In the instant case, Plaintiffs have satisfied the preliminary showing that there is a question of material fact regarding the falsity of Officer Bray's statements in the search warrant concerning his surveillance of Lockard on October 16, 2012, but Plaintiffs failed to make that preliminary showing with regard to his statements about the confidential informant.

14

(*Id.* PageID.4358-59 (emphasis added).) The Court then went on to note in a footnote, however, that "Bray's boilerplate 'reliable and credible' designation of the multiple-use confidential information is undermined by Bray's inability to identify such a person, <u>and</u> the inability to produce any police records of such use." (*See id.* PageID.4359 n.2 (emphasis in original).)

The Court DENIES Defendant's Motion in Limine No. 1 (ECF No. 125) seeking to prohibit any evidence or argument suggesting that Defendant Bray's warrant affidavit was falsified as it related to his confidential informant. The Court's finding, in ruling on the issue of qualified immunity, that Plaintiffs failed to make the necessary strong preliminary showing that the tip from the CI was false, so as to excise the tip from the search warrant affidavit, does not render Plaintiffs' inquiry regarding Bray's reliance on the confidential informant irrelevant at trial under the Federal Rules of Evidence. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[E]vidence that is merely ancillary to evidence that bears directly on the issues may be admissible," but such "evidence must at least be a step on one evidentiary route to the ultimate fact." *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020) (citations and

15

quotation marks omitted). Whether an affidavit establishes a proper nexus between the evidence sought and the place to be searched is a fact-intensive question resolved by examining the totality of the circumstances presented. *See United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013).

In general, the question of probable cause in a section 1983 action is one for the jury, unless only one reasonable determination is possible. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002); *see Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) ("[I]n a § 1983 action[,] fact-finding under the *Franks* standard is the province of the jury.") (citation omitted). The Court recognized that inclusion of information regarding the CI's reliability "in an affidavit which Plaintiffs have made a substantial showing contains non-truthful critical claims regarding the dates of the corroboration and the raid, lead[s] the Court to conclude that the remaining information in the affidavit supports the Court's denial of qualified immunity to Officer Bray." (ECF No. 120, Opinion and Order, PageID.4358.) Accordingly, the Court DENIES Defendant's Motion in Limine No. 1 (ECF No. 125) seeking a blanket preclusion of evidence or argument suggesting that Defendant Bray's warrant affidavit was falsified as it relates to his confidential informant.

**B.** **Defendant's Motion in Limine to Preclude Reference at Trial to Plaintiff's Criminal Case's *Franks* Hearing (ECF No. 126) [Def.'s MIL No. 2]**

**Plaintiffs' Motion in Limine to Admit *Res Gestae* Fact (ECF No. 130) [Pls.' MIL No. 3]**

Defendant argues in his second motion in limine that this Court ruled in its Opinion and Order on Defendant's motion for summary judgment that the prior judicial determination by the Wayne County Circuit Court Judge at the *Franks* hearing was not admissible evidence, and that Defendant is merely seeking enforcement of the Court's prior ruling. (ECF No. 126, Def.'s MIL No. 2.) Defendant Bray states that he was not a party to the state court *Franks* hearing and that the evidence purportedly used at that hearing is no longer available. Defendant contends that the jury in this case must consider anew whether Sgt. Bray falsified his warrant and that "any mention of the *Franks* hearing, the result of the *Franks* hearing, or evidence used at the *Franks* hearing should not be permitted at trial," and that "Plaintiff should not be permitted to say any more than he was not convicted of the charges." (*Id.*)

Plaintiffs respond that they have filed a cross-motion in limine seeking an order to admit into evidence at trial the facts and circumstances surrounding Lockard's dismissed state court charges, including the state court's findings

17

following the *Franks* hearing that Defendant Bray falsified his search warrant affidavit. (ECF No. 134, Pls.' Resp.) (ECF No. 130, Pls.' MIL No. 3.) Plaintiffs argue that "[t]he lens through which the Court considered the admissibility of the state court's *Franks* findings was limited to summary judgment." (Pls. Resp. PageID.4481.) Plaintiffs contend that "[g]iven that the issue in this case is whether Defendant Bray had probable cause to obtain a search warrant, and in light of Defendant's repeated assertions that Plaintiffs were engaged in criminal activity, it is both fair and proper for the jury to hear that the state court criminal charges against Plaintiff Lockard were dismissed," and why they were dismissed – because the state court found that Defendant falsified his search warrant affidavit. (Pls.' MIL No. 3, PageID.4448.)

Defendant replies that the Court has already ruled on this issue, and there is no distinction regarding the admissibility of evidence for purposes of summary judgment and for trial. Defendant argues that the state court's determination goes to the heart of the factual dispute to be determined in this case, and that the state court's prior determination, which was made in a different case with different parties based on different evidence, should be excluded. (ECF No. 140, Def.'s Reply) (ECF No. 137, Def.'s Resp. to Pls.' MIL No. 3.)

In its ruling on Defendants' motion for summary judgment, the Court considered this same issue – the admissibility of the state court's *Franks* decision – and concluded that the evidence was not admissible because it was hearsay and not subject to judicial notice. The Court stated that Fed. R. Evid. 201 and 803(8), and the cases cited by Plaintiffs, *Complaint of Paducah Towing*, 692 F.2d 412 (6th Cir. 1982) and *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988), "do not support Plaintiffs' argument that the prior judicial determination by a Wayne County Circuit Court Judge at a *Franks* hearing is admissible evidence, in particular, because Defendant Bray was not a party to that proceeding." (ECF No. 120, PageID.4353.) The parties in the matter before the state court were the State of Michigan and Douglas Lockard, not Matthew Bray.

The Court GRANTS Defendant's MIL No. 2 (ECF No. 126) and DENIES Plaintiffs' MIL No. 3 (ECF No. 130).

Plaintiffs first attempt to make a distinction between the admissibility of evidence for purposes of summary judgment and admissibility for purposes of trial. This argument fails. It is settled law that the standard for admissibility of evidence is the same at the summary judgment stage as at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (to survive a Rule 56 motion, plaintiff "must come forward with affidavits or other admissible evidence"); *see also Red Strokes*

19

*Entertainment, Inc. v. Sanderson*, 977 F. Supp. 2d 837, 844 & n.5 (M.D. Tenn. 2013) (stating that "[t]he standard for admissibility is the same at this [summary judgment] stage as at trial" and "the court intends its [evidentiary] rulings to have preclusive effect in this case" and the "the parties will not file motions *in limine* that retread evidentiary objections addressed in th[e] opinion").

Plaintiffs do not attempt to distinguish the reasoning of this Court in its Opinion and Order on summary judgment, in which it found that the prior state court *Franks* decision is inadmissible. Plaintiffs in fact state that they "agree with the Court's analysis in its summary judgment Opinion[.]" (Pls.' Resp. at pp. 4-5 & fn.1, PageID.4483-84.) Plaintiffs instead claim that "there is plenty of legal authority that supports the proposition that the state court's *Franks* findings are admissible even though the truth of the findings (i.e., the state court's finding that Bray falsified his affidavit) may still be in dispute." (Pls.' Resp. PageID.4482.) Plaintiffs contend that the state court's *Franks* findings are admissible "for the limited purpose of explaining why, and how, Lockard's state court criminal charges were dismissed." (*Id.* PageID.4483.) Plaintiffs propose that "the jury should be given a limiting instruction indicating that they may, or may not, accept the state court's finding that Bray falsified his affidavit." (*Id.* PageID.4484.)

Plaintiffs rely on *Embassy Realty Investments, LLC v. City of Cleveland*, 877 F. Supp. 2d 564 (N.D. Ohio 2012) as supporting the admissibility of the state court *Franks* hearing and findings in this case. (Pls.' Resp. PageID.4482-83.) However, that case did not involve the admissibility of a judicial determination at a *Franks* hearing at trial in a subsequent civil case. Rather, in *Embassy*, plaintiff property owners sued the City of Cleveland under 42 U.S.C. § 1983 for conducting an emergency demolition of their property while an appeal was pending, asserting claims under the Fourth and Fifth Amendments. *Embassy Realty Investments*, 877 F. Supp. 2d at 568-59. The City of Cleveland filed a motion to dismiss, and the court addressed whether it could consider documents attached to defendants' motion to dismiss consisting "primarily of the records of the various administrative agencies and courts that have addressed issues relevant to the property in question," without converting that motion to a motion for summary judgment. *Id.* at 571. The court noted that "it is the alleged conduct of the defendants during the course of these administrative proceedings; namely, the razing of the building during the pendency of the appeal, that plaintiffs claim has caused the injury for which they seek monetary and other types of relief." *Id.* The court then found that it could take judicial notice of the "existence of these public records," "including any rulings made by the various agencies and state courts," but not "of the truth of any statement of facts

21

contained within these documents." *Id.* Plaintiffs seek to apply that court's ruling to the facts of this case.

The Court finds that the Ohio district court's ruling in *Embassy* is inapplicable to the facts of this case. It is settled law in this District that "Michigan law does not allow criminal defendants turned civil rights plaintiffs to invoke offensive nonmutual collateral estoppel when suing individual officers." *See Cosby v. Oakland Cnty.*, No. 19-10847, 2020 WL 5768790, at *4 (E.D. Mich. Sept. 25, 2020) (citing *Lewis v. City of Detroit*, No. 09-cv-14792, 2011 WL 2084067, at *3 (E.D. Mich. May 24, 2011) (citing *Burda Bros. Inc. v. Walsh*, 22 F. App'x 423, 430 (6th Cir. 2011)). Defendant Bray was not a party to the earlier state court action, and thus did not have a personal stake in the outcome of that proceeding. Defendant further states that there was evidence used at the state court *Franks* hearing which is no longer available, and the jury in this case will be asked to determine the reliability of the search warrant affidavit based on different evidence at trial. (ECF No. 137, Defs.' Resp. PageID.4504.) Thus, the prior *Franks* determination was made in a different case, with different parties, based on different evidence, and should be precluded.

The Court decides, just as it did in when ruling on Defendants' motion for summary judgment, that the prior judicial determination by the Wayne County Circuit Court in a *Franks* hearing is inadmissible at the trial in this case.

22

Accordingly, the Court GRANTS Defendant's MIL No. 2 (ECF No. 126) and DENIES Plaintiffs' MIL No. 3 (ECF No. 130). The Court will permit Plaintiff to state that he was not convicted on the state court charges, but say nothing more about the state court's determination.

### C.   Defendant's Motion in Limine to Preclude Evidence of Other Purported Act (ECF No. 127) [Def.'s MIL No. 3]

### Plaintiffs' Motion in Limine to Admit Similar Acts Evidence (ECF No. 128) [Pls.' MIL No. 1]

### Plaintiffs' Motion in Limine to Admit Statements of Agents of Defendant City of Detroit (ECF No. 129) [Pls.' MIL No. 2]

Defendant filed a motion in limine seeking to preclude Plaintiffs from presenting evidence, argument, or comment regarding the following five categories of evidence: (1) other civil lawsuits involving Defendant Bray or any other past or present members of the DPD; (2) any citizen complaints, investigation requests, or similar inquiry concerning Defendant Bray or any other past or present members of the DPD; (3) any disciplinary investigations or Internal Affairs and/or Professional Standards investigations or actions related to Defendant Bray or any other past or present members of the DPD; (4) any information related to any discipline, terminations, suspension, reductions in rank, or other similar action against Defendant Bray or any other past or present members of the DPD; and (5) any

23

criminal actions taken against Defendant Bray or any other past or present members of the DPD. (ECF No. 127, Def.'s MIL No. 3.) Defendant argues that this information has nothing to do with the present matter and would be offered simply to make Defendant Bray appear to be a bad actor, and thus should be excluded under Fed. R. Evid. 403. Defendant contends that Plaintiffs should be limited to the facts and circumstances surrounding the events of October 15, 16, and 17, 2012 to prove their claims.

Plaintiffs argue in their Response that they do not intend to offer any evidence regarding the *Gardella* or *Metris-Shamoon* "raids," or regarding the evidence listed in category no. 2 above – any citizen complaints, investigation requests, or similar inquiry concerning Defendant Bray or any other past or present members of the DPD. (ECF No. 133, Pls.' Resp.) Plaintiffs instead contend that Defendant Bray's involvement in the *Davis*, *Reid*, and *McShane/Frontczak* cases is relevant and admissible, and they generally object to Defendant's "omnibus motion" with regard to categories numbered 3 through 5.

Plaintiffs state that they have filed a "cross-motion in limine" to admit Bray's alleged "similar act evidence" with regard to the raids in the *Davis*, *Reid*, and *McShane/Frontczak* cases. (See ECF No. 128, Pls.' MIL No. 1.)

Plaintiffs have also filed a Motion in Limine to Admit Statements of Agents of Defendant City of Detroit. (ECF No. 129, Pls.' MIL No. 2) This motion is essentially a "cross motion in limine" with regard to category numbers 3 and 4 of Defendant's MIL No. 3.

The Court will address each of the five categories of evidence, and the corresponding motions in limine below.

### 1. Category No. 1: The *Davis*, *Reid*, and *McShane/Frontczak* cases [Def.'s MIL No. 3 and Pls.' MIL No. 1]

In his motion in limine, Defendant Bray seeks to preclude Plaintiffs from presenting evidence, argument or comment regarding other civil lawsuits involving Defendant Bray or other DPD officers, namely the *Davis*, *Reid*, *McShane/Frontczak*, *Gardella*, and *Metris-Shamoon* cases. Defendant contends that these other cases have nothing to do with the present matter, and that they would be offered simply to make Defendant Bray appear to be a bad actor or make him appear to be guilty by association, and thus should be excluded under Fed. R. Evid. 403. (ECF No. 127, Def.'s MIL No. 3, PageID.4406.) Defendant argues that this "other case" evidence would not be admissible under Fed. R. Evid. 404(b), and that there would be too much danger of the jury interpreting the evidence of the other acts as propensity

evidence, and the other case evidence therefore should be excluded. (*Id.* PageID.4406-07, citing *United States v. Asher*, 910 F.3d 854 (6th Cir. 2018).)

First, Plaintiffs affirmatively state that they do not intend to offer evidence regarding the *Gardella* or *Metris-Shamoon* cases (ECF No. 133, Pls.' Resp. PageID.4470), and the Court GRANTS Defendant's motion with regard to those two cases as unopposed, and precludes Plaintiffs from offering evidence or argument regarding the *Gardella* or *Metris-Shamoon* cases at trial.

Plaintiffs state that they do intend to offer evidence regarding Defendant Bray's involvement in the *Davis*, *Reid* and *McShane/Frontczak* "raids." (ECF No. 133, Pls.' Resp. PageID.4470.) Plaintiffs contend in their MIL No. 1 that Bray was involved "in three similar raids: the December 2012 raid upon the Warren home of Timothy and Hatena Davis; the January 2013 raid upon Justin Reid's medical marijuana business located in Detroit; and the March 2014 raid upon the Ferndale home of Michael McShane." (ECF No. 128, Pls.' MIL  No. 1, PageID.4418-19.) Plaintiffs state that Bray was "included" in the raids in *Davis* and *Reid*, and was the affiant of the search warrant in *McShane/Frontczak*. (*Id.*) Plaintiffs argue two bases for admissibility of this "other case" evidence: (1) that Bray's "participation" in the *Davis*, *Reid* and *McShane/Frontczak* raids is "intrinsic or inextricably intertwined" with the allegations against Bray in this case, and thus not precluded by Rule 404(b)

26

as *res gestae* evidence (*id.* PageID.4422-23, citing *Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013)), and/or (2) the "other case" evidence is admissible under Fed. R. Evid. 404(b) for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." (*Id.* PageID.4424-29.)

The Court rejects Plaintiffs' first argument that Fed. R. Evid. 404(b) does not apply to the evidence at issue and that the other case evidence is admissible because it is "intrinsic to" or "inextricably intertwined with evidence of" the alleged wrong in this case. Plaintiffs rely on *Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013). *Flagg* states that intrinsic evidence includes acts that are "part of a single episode" and

> "background evidence" that "has a causal, temporal or spatial connection with the charged offense, is a prelude to the central allegation, is directly probative of the central allegation, arises from the same events as the central allegation, forms an integral part of a witness's testimony, or completes the story of the central allegation."

*Id.* at 175-76 (quoting *United States v. Gonzalez,* 501 F.3d 630, 639 (6th Cir. 2007); *United States v. Hardy,* 228 F.3d 745, 748 (6th Cir. 2000)); *see also United States v. Brown*, 888 F.3d 829, 836 (6th Cir. 2018) (same). The search warrants at issue in this case and the three other civil lawsuits were not "part of a single episode" and did not have "a causal, temporal or spatial connection with the charged offense."

Those other searches were not a "prelude to the central allegation," but occurred in some cases months after, and in one case more than a year after, the search in this case, some involved different officers in the Narcotics Unit, and all of the searches were at different locations and involved different criminal investigations and different suspects. While Defendant Bray was involved in all of the searches, he had different roles in the searches, and was not the affiant for the search warrants in two of those other civil cases (*Reid* and *Davis*).

The Court also rejects Plaintiffs' second argument that the other civil actions are admissible under Fed. R. Evid. 404(b). Pursuant to Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose," such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Trial courts employ a three-part test to determined the admissibility of Rule 404(b)(2) evidence. *See United States v. Mack*, 729 F.3d 594, 601 (6th Cir. 2013). First, a court determines whether there is sufficient evidence that the crime, wrong, or other act took place. *Id.* Second, it decides whether evidence of that conduct is offered for a proper purpose, i.e., "whether the evidence is probative of a material

issue other than character." *Id.* Third, the court considers whether any risk of unfair prejudice substantially outweighs the evidence's probative value. *Id.*

The Court first considers whether there is sufficient evidence of the alleged other bad acts. As Defendant argues, the evidence that the other acts occurred is contested (based on *allegations* in the respective cases) and the plaintiffs have not proven that any of the other warrants were fabricated. The plaintiffs' claims related to the searches in *Reid* and *Frontczak/McShane* have been dismissed on motions for summary judgment (and both are currently on appeal), and the plaintiff's claims in *Davis* have been dismissed pursuant to a stipulated order of dismissal with prejudice following a settlement. Thus, there was no finding of "other bad acts," only allegations. The Court would be required to conduct "mini-trials" on the allegations in each of these three other civil actions to determine the sufficiency of the allegations in those cases, involving unrelated searches.

The Court next considers whether evidence of the prior acts is offered for a proper purpose, i.e., "whether the evidence is probative of a material issue other than character." *Mack*, 729 F.3d at 601. Plaintiffs broadly contend that the other civil actions prove "intent, preparation, plan, identity, absence of mistake, and/or lack of accident." (ECF No. 128, Pls.' MIL No. 1 PageID.4426.) Plaintiffs assert, relying on the allegations in their Complaint, that Defendant Bray's actions with regard to

29

the search warrant in this case "were part and parcel of a plan to engage in such 'similar unlawful searches and seizures of other legitimate marijuana grow facilities in and around the City of Detroit.'" (*Id.* citing Compl. ¶ 22.) However, as Defendant states, Bray was not the affiant in the *Reid* and *Davis* searches, but rather simply part of the team executing the warrant. And in *McShane/Frontczak*, Bray was the affiant, but probable cause was established through a controlled purchase of narcotics and there was no allegation in that case that the date of the search was fabricated – the key disputed allegation in this case. Plaintiffs also contend there is a common "signature" present in all the searches, because the officers wore ski masks and did not immediately present a search warrant. However, even if true, those allegations do not have anything to do with the only remaining claim at issue in this case – whether Bray falsified documents regarding the date of the search in violation of Plaintiffs' Fourth Amendment rights. Plaintiffs' *Monell* claim against the City and excessive force claim against Defendant Bray have been dismissed. The evidence of the searches in the other civil actions would be probative if the jury were permitted to infer that because Bray was involved in those prior searches, in which there were allegations of impropriety, that the search at issue in this case was also improper, but this is exactly the "kind of propensity reasoning which Rule 404(b) prohibits the jury from using in assessing the probative value of [the defendant's] prior [bad acts] …

30

and prevents the judge from considering when engaging in the Rule 403 balancing process." *United States v. Bell*, 516 F.3d 432, 445-46 (6th Cir. 2008).

The final prong of the Rule 404(b)(2) analysis requires the Court to determine whether the risk of unfair prejudice substantially outweighs the evidence's probative value. Unfair evidence "refers to evidence which tends to suggest decision on an improper basis." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988). The quintessential examples of an improper basis in this context is "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the latter bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." *Bell*, 516 F.3d at 445. As discussed above, evidence of the execution of the search warrants in the other three civil actions lacks probative value to the claim at issue in this case. There is little in common, at best, between the October 2012 search at issue in this case and the subsequent searches in the three other cases. The issue in this case involves whether Defendant Bray made false statements regarding his surveillance on October 16, 2012, and the date of the raid. (ECF No. 120, Opinion and Order, PageID.4355.) Plaintiffs have failed to show that the other civil actions have probative value to this issue, and there is a substantial risk that the jury would interpret the unproven

allegations in those other cases as propensity evidence. *See United States v. Asher*, 910 F.3d 854, 862 (6th Cir. 2018).

The Court GRANTS Defendant's Motion in Limine No. 3 (ECF No. 127) with regard to the other civil actions (Category No. 1), and DENIES Plaintiffs' Motion in Limine No. 1 (ECF No. 128).

### 2. Category No. 2: Citizen complaints, investigation requests, or similar inquiry [Def.'s MIL No. 3 ]

Defendant Bray argues that he has executed thousands of search warrants in his career and has never been disciplined by the City of Detroit or faced criminal charges for reasons related to any of those searches. (ECF No. 127, Def.'s MIL No. 3, PageID.4404, citing ECF No. 127-1, Deposition of Defendant Matthew Bray, PageID.4410-11.)

In their Response to Defendant's motion in limine, Plaintiffs do not oppose Defendant's motion with regard to the category no. 2 evidence. (ECF No. 133, Pls.' Resp. PageID.4470 (stating that they oppose Defendant's motion to preclude evidence regarding the *Davis*, *Reid*, and *McShane/Frontczak* raids, and category numbers (iii), (iv), and (v) only).)

Thus, the Court GRANTS Defendant's motion to preclude evidence relating to "[a]ny citizen complaints, investigation requests, or similar inquiry concerning

32

Defendant or any other past or present members of the Detroit Police Department,"

(ECF No. 127) as unopposed.

### 3.   Category No. 3: Disciplinary investigations or internal affairs and/or professional standards investigations or actions [Def.'s MIL No. 3 and Pls.' MIL No. 2]

Defendant seeks to preclude Plaintiffs from presenting evidence or argument

regarding any disciplinary investigations or internal affairs investigation related to

Defendant or other DPD officers. (ECF No. 127, Def.'s MIL No. 3.) As stated above,

Defendant Bray argues that he has executed thousands of search warrants in his

career and has never been disciplined by the City of Detroit or faced criminal charges

for reasons related to any of those searches. (*Id.* PageID.4404, citing ECF No. 127-

1, Deposition of Defendant Matthew Bray, PageID.4410-11.) Defendant argues that

to the extent Plaintiffs seek to use evidence at trial of disciplinary or criminal actions

against other Detroit Police Officers, that evidence would be irrelevant to the present

issue and would be offered simply to make Defendant Bray appear to be a bad actor

or make him appear to be guilty by association. (*Id.* PageID.4406.)

Plaintiffs argue in their Response brief that they oppose a broad preclusion of

evidence relating to "internal affairs investigations." (ECF No. 133, Pls.' Resp.

PageID.4472.) Plaintiffs cite, as an example, that former DPD Chief James Craig

disbanded the Narcotics Unit, of which Defendant Bray was a member, in 2014 after

33

an Internal Affairs investigation found widespread "irregularities" relating to narcotics searches and seizures. (*Id.*) Plaintiffs refer to Chief Craig's statements regarding "false affidavits" and a pattern of "fabricated" affidavits, surveillance that was not conducted, and erroneous reporting of information from confidential informants, and contend that such statements are relevant to factual disputes in this case regarding whether Bray falsified his reliance on a confidential informant and his alleged surveillance of Plaintiffs' home, even if there is no specific finding by Internal Affairs as to Bray's affidavit in this case. (*Id.*)

Defendant argues in his Reply brief that Chief Craig's statements do not involve Defendant Bray's search warrant affidavit and were not made as the result of an investigation regarding Bray's warrant affidavit, and that Chief Craig has no personal knowledge of Defendant Bray's warrant affidavit in this case, and thus his testimony has no bearing on the accuracy of Bray's affidavit and is irrelevant. (ECF No. 141, Def.'s Reply PageID.4521.)

Plaintiffs filed a "cross" motion in limine to admit statements of agents of the City of Detroit. (ECF No. 129, Pls.' MIL No. 2.) Plaintiffs specifically refer to statements by DPD's former Deputy Chief Chuck Fitzgerald and former Chief James Craig. Plaintiffs state that the City of Detroit produced through discovery an Internal Affairs file concerning an investigation of another member of the former narcotics

34

unit (not Bray), which contained a recorded interview with DPD's then Deputy Chief Chuck Fitzgerald. (*Id*. PageID.4436.) Plaintiffs contend that during this recorded interview, Deputy Chief Fitzgerald stated that, as a general proposition, it would be unlikely that a narcotics officer would not remember or be able to identify his confidential informant. (*Id.* PageID.4437.) Deputy Chief Fitzgerald also stated that narcotics officers were required to document any surveillance and that they were required to do so under the City's "SOPs." (*Id.*) Plaintiffs also state that former Chief of Police James Craig confirmed in his deposition that the City's Internal Affairs department uncovered "false affidavits" that he described as "fabricated," and he acknowledged that some surveillance was not conducted as claimed and that some information officers said they got from confidential informants was erroneous. (*Id.* PageID.4437.)

Plaintiffs seeks an order in limine allowing them to offer into evidence at trial the recorded interview containing Deputy Chief Fitzgerald's statements, and also the portions of former Chief Craig's deposition testimony, even if those two individuals appear live for trial. (*Id.* PageID.4438.) Plaintiffs contend that the statements and testimony "is directly probative to the fact question of whether Bray fabricated the existence of a Confidential Informant and further fabricated that he conducted surveillance." (*Id.* PageID.4439.) Plaintiffs contend that these statements fall within

35

the exclusion to hearsay under Fed. R. Evid. 801(d)(2)(D) because they are statements made while Fitzgerald and Craig were high-ranking agents of the City of Detroit, and that the audio recording of Fitzgerald's interview also constitutes a business record kept on the ordinary course of business.

Defendant argues in his Response brief that Plaintiffs' only remaining claim is against Bray as to whether Bray falsified information related to the date of the search and seizure of Plaintiffs' home. (ECF No. 136, Def.'s Resp. PageID.4497.) Defendant contends that the Court has already held that Plaintiffs failed to make a substantial preliminary showing regarding the information Bray received from the Confidential Informant, and thus that "Plaintiff cannot challenge the portions of the warrant affidavit relating to the CI," and "[a]ny evidence suggesting that the CI information was falsified is irrelevant to this case[.]" (*Id.* PageID.4498.) Defendant continues that even if the claims regarding the CI "were part of this case," the Fitzgerald and Craig statements are "still inadmissible as irrelevant and hearsay" because neither individual was speaking about the CI in this case, and they were not even speaking about affidavits that were sworn by Defendant Bray. (*Id.*) Defendant further contends that the statements do not fall under the hearsay exception in Rule 801(d)(2)(D) because neither Fitzgerald nor Craig are an agent or employee of Bray, and the City of Detroit is no longer a defendant in this case.

36

In this Court's Opinion and Order dismissing the City of Detroit as a defendant in this case, this Court concluded "that the snippets of interviews with former police officials regarding police misconduct do not establish the necessary evidence relating to this case, relating to [t]his time, that an official with final decision-making authority ratified these illegal actions, nor establish the existence of a policy of inadequate training or supervision, or the tolerance or acquiescence of federal rights violations." (ECF No. 120, Opinion and Order PageID.4362.)

The City of Detroit is no longer a defendant in this case. The Court finds that, without a showing that either Fitzgerald or Craig had personal knowledge of the search warrant at issue here, and particularly Defendant Bray's affidavit in support of that warrant, that the prior recorded interview and deposition testimony simply are not relevant, and not subject to a hearsay exception, and thus not admissible at trial. Accordingly, Defendant's Motion in Limine No. 3 to exclude the category no. 3 evidence is GRANTED and Plaintiffs' Motion in Limine No. 2 is DENIED.

4. **Category No. 4: Information related to any discipline, terminations, suspensions, reductions in rank, or other similar action [Def.'s MIL No. 3]**

Defendant does not further explain in his motion in limine what specific information he seeks to preclude in this category, and Plaintiffs do not assert in response any specific information they would seek to admit in this category.

Accordingly, the Court DENIES Defendant's motion in limine with regard to this category, without prejudice, and will agree to revisit this issue at trial, if necessary.

> **5.     Category No. 5: Criminal actions taken against Defendant or any other past or present members of the DPD [Def.'s MIL No. 3]**

Defendant seeks to preclude Plaintiffs from presenting evidence or argument regarding any criminal actions taken against Defendant or any other DPD officers. (ECF No. 127, Def.'s MIL No. 3.) As stated above, Defendant Bray argues that he has executed thousands of search warrants in his career and has never been disciplined by the City of Detroit or faced criminal charges for reasons related to any of those searches. (*Id.* PageID.4404, citing ECF No. 127-1, Deposition of Defendant Matthew Bray, PageID.4410-11.) Defendant argues that to the extent Plaintiffs seek to use evidence at trial of other disciplinary or criminal actions taken against other DPD officers, those alleged events have nothing to do with the present matter and should be excluded as irrelevant and unfairly prejudicial.

Plaintiffs argue in their Response brief that they seek to admit into evidence certain statements made by former Chief Craig relating to the criminal convictions of former DPD Narcotics Officers Hansberry and Watson. (ECF No. 133, Pls.' Resp. PageID.4473.) Plaintiffs state that former Chief Craig stated that the internal affairs

investigation expanded to "focus[] on the activities of officers who worked with ex-Detroit narcotics cops" Hansberry, Watson, and Leavells, and that Bray is included in such officers who were part of the Hansberry/Watson crews. Plaintiffs seek permission to "probe and question Bray about these facts and circumstances and impeach him if necessary." (*Id.* PageID.4473.)

In this Court's Opinion and Order on Defendants' motion for summary judgment, this Court concluded "that the unrelated criminal conduct of Detroit Police narcotics officer David Hansberry, Bryan Watson, and Arthur Leavells, who were charged with stealing kilos of cocaine and millions of dollars from drug dealers, and Leavells was also charged with lying on affidavits in support of search warrants," could not create liability for their employer, the City of Detroit. (ECF No. 120, Opinion and Order, PageID.4361.) If these alleged criminal actions cannot create liability for the City of Detroit, these actions plainly would not be relevant to Plaintiffs' claim against Defendant Bray. Plaintiffs have made no remotely similar allegations of such criminal activity against Defendant Bray, and these alleged criminal actions did not involve Defendant Bray's search warrant affidavit at issue in this case and have no bearing on the accuracy of that affidavit.

Accordingly, the Court GRANTS Defendant's Motion in Limine No. 3 with regard to any alleged criminal actions taken against Defendant or any other DPD officers in category no. 5.

## IV.    CONCLUSION

For the reasons set forth above, the Court rules on the parties' motions in limine as follows:

- **Defendant's MIL No. 1 (ECF No. 125)**, seeking to preclude evidence suggesting the confidential informant relied upon by Defendant Bray was falsified, is **DENIED**;

- **Defendant's MIL No. 2 (ECF No. 126)** is **GRANTED** and **Plaintiffs' MIL No. 3 (ECF No. 130)** is **DENIED**, and the Court finds, consistent with its ruling on summary judgment, that the prior judicial determination by the Wayne County Circuit Court in the *Franks* hearing is inadmissible, and that Plaintiffs should be permitted to state only that Lockard was not convicted on the state court charges;

- **Defendant's MIL No. 3 (ECF No. 127)** is **GRANTED in part** to preclude evidence of other civil actions (Category No. 1), and **Plaintiffs' MIL No. 1 (ECF No. 128)** is **DENIED**.

40

- **Defendant's MIL No. 3 (ECF No. 127)** is **GRANTED in part** to preclude evidence relating to "[a]ny citizen complaints, investigation requests, or similar inquiry concerning Defendant or any other past or present members of the Detroit Police Department," (category no. 2) <u>as unopposed</u>;

- **Defendant's MIL No. 3 (ECF No. 127)** is **GRANTED in part** to preclude disciplinary investigations or internal affairs investigations that do not involve Defendant Bray and/or the search warrant at issue in this case (category no. 3) and **Plaintiffs' MIL No. 2 (ECF No. 129)** related to statements of agents of the City of Detroit is **DENIED**;

- **Defendant's MIL No. 3 (ECF No. 127)** is **DENIED in part, without prejudice,** with regard to discipline, terminations, suspension, reductions in rank, or other similar actions (category no. 4); and

- **Defendant's MIL No. 3** is **GRANTED in part** to preclude any alleged criminal actions taken against Defendant or any other DPD officers (category no. 5) that do not involve Defendant Bray and/or the search warrant at issue in this case.

**IT IS SO ORDERED.**

Dated: May 12, 2022                          s/Paul D. Borman
                                             Paul D. Borman
                                             United States District Judge